The last case on our calendar is National Rifle Association of America versus Voolo. Both counsel are here. Counsel, you may proceed. Thank you, Your Honor, and may it please the court. My name is Andrew Celli, and I represent Maria Voolo, the appellant in this matter. Your Honors, the district court's order should be reversed, and the second amended complaint should be dismissed for three reasons. First, because the second amended complaint fails to plausibly allege coercive speech, and even as it frankly acknowledges that Ms. Voolo was engaged in a legitimate law enforcement investigation designed to take an illegal and dangerous product off the market. Second, no court has ever held that a public official's constitutionally protected speech is transformed into coercion simply because it occurs in the context, that's the phrase they use, in the context of a well-established law enforcement investigation. And finally, the case should be dismissed because no reasonable official in Ms. Voolo's position would have believed that suggesting leniency to the target of a regulatory investigation in exchange for cooperation, which is probably the best they can do with what they allege, that that would ever be unlawful. Okay, let's lay out the ground first. Ms. Voolo has to admit in order to get qualified immunity that everything in the complaint is true. Does she not? Everything that is well, every fact that is well pleaded, yes, not conclusions. There's really no condition. She has to admit everything is true in order to seek qualified immunity. She says, I say it's true, but the facts are wrong. She says there's falsity in there. So that doesn't quite do what she has to do in order to seek qualified immunity. What I would say to that, your honor, is that Iqbal is very clear that labels and conclusions and things that are more likely lawful than unlawful do not need to be accepted as true because they're not plausible. That's the terminology of Iqbal. And the critical passage here, the critical passages of paragraphs 21 and 69 are not plausible for that reason. But we're not talking about whether this complaint survives. That's the Iqbal question. We're talking about whether Maria Voolo can seek qualified immunity without admitting that everything in the complaint is true. That is our standard. Well, I think both things happen at the same time. But when you move to the qualified immunity standard, which I think is, I agree with you as a quorum, you have to ask yourself, where is the case that holds that protected government speech, which everyone acknowledges the guidance letters and the press release are protected government speech? Where is the case that says that that somehow becomes coercive because it occurs in the context of a valid regulatory investigation? That goes to the merits of the case. We're talking about qualified immunity to allow Ms. Voolo not to have to litigate at all. That's what you're giving me as merits. I don't agree respectfully. Respectfully, the first prong of qualified immunity is that they have to demonstrate that there is a clearly established constitutional right. And none of the cases, not Zyper, not Hammerland, Hammerhead Enterprises, not Ratner, or Quendi, none of those cases involve these kinds of facts where you have a valid law enforcement or regulatory investigation and protected government speech put together to create coercion. Taking the complaint is true. Are you telling me that no government official would understand that coercing the entities that they regulate would be a violation of the entity's First Amendment rights? Are you saying that? No, framing it with the legal conclusion that, of course, every government entity, every government official should know that coercion is not allowed. Convincing speech is permitted. Coercion is not allowed. What I'm saying is that no reasonable official in Ms. Voolo's position would have known that putting together protected speech with these vague comments in the context of a law enforcement investigation where there were actual violations. We don't have any case where there were actual underlying legal violations. Let me ask you this. The vague comments that you just referred to, those occurred in the context of a prosecutorial action by her? As they allege it, yes, Your Honor. As they allege it. And I'm taking it as alleged. Is that protected by absolute immunity? So it's a great question. We got a big part of the complaint was dismissed on the grounds of absolute immunity because it went to the charging issues. I'm not going to make their argument about this language, but we are accepting for purposes of this argument that this was investigatory. This was in the context of an investigatory meeting. But nonetheless, Ms. Voolo could have spoken to Reva Siegel at Yale or Larry Tribe at Harvard. She cannot have been told that she wasn't allowed to make a protected speech like the guidance letters and the press release. There's just no case like that. Paragraph 21 alleges that during the meetings in February 2018, Ms. Voolo made clear, however, that DFS was less interested in pursuing the infractions in which she spoke so long as Lloyd sees providing insurance to gun groups. And plaintiffs allege that they were thereby coerced or that the insurers were coerced to terminate their business arrangements with the NRA. So I understand that the allegation is that she made it clear and so making it clear that was coercive and violative of the First Amendment rights. Is your position that that is too vague and conclusory an allegation that's not specific enough for her defense of qualified immunity to be rejected or something else? Yes, Your Honor, exactly. But there are two other reasons as well. It is too vague and conclusory. That is absolutely point one. But point two and three are that even if one were to stretch and say what can we infer from that vague language, the worst it could possibly be is a suggestion in the context of an investigatory meeting that will provide you with some leniency if you cooperate in the context of the investigation. And the other aspect of this that's implausible, I think it's very important to say, is this idea that the threat was unless you disassociate from the NRA. The consent orders which are attached to the complaint and therefore deemed part of the complaint do not require disassociation from the NRA for all purposes. They permit by their terms the NRA to continue to get insurance from these vendors. They also say, however, that essentially they say look you can't do business with the NRA of this sort, which is very typical when you have a regulatory investigation and you have co-conspirators. That's really what was going on here, that the NRA and these entities were engaged in joint illegal conduct. There was a settlement with respect to one of the co-conspirators and they said look you broke the law, you admit it, you can't do that anymore with the NRA. And are you saying also that even if we were to kind of accept making it clear that they would prosecute some infractions more than others or investigate a little more than others, that that she was at only at no point did she communicate that she would take an unlawful act in that she would be enforcing regulations that were extant. Is that correct? Correct and there's no case that says there's if you said if you changed made clear into she said or demanded just give them that much, which I think is too much to give them, there's still no case that says that clearly establishes that that's a constitutional violation. And if you look at the cases that have been decided in the course of speech context like Zyper and Hammerhead and so on, none of them involved a valid regulatory investigation or real violations which are admitted and pled, affirmatively pled here by the NRA. I see that my time is up unless there are any other questions. You have reserved three minutes for rebuttal. Good morning, Your Honor. May it please the court. I'd like to begin by addressing counsel's challenge to identify a single case where purportedly lawful bully pulpit government speech coincided with a purportedly valid regulatory enforcement action and the gestalt combination of these menacing statements and this regulatory action in the background was deemed to constitute a violation of the First Amendment. There's a case that we cite liberally in the briefing below. It was a pretty high profile decision out of the Seventh Circuit in 2015. That's Backpage versus DART. That's 807 F3229. There, Judge Posner grants a preliminary injunction against the sheriff's office, which is investigating the illegal solicitation and sale of prostitution and similar services on a classified type website known as Backpage. You know what the sheriff does in the Backpage case? He sends a letter on official stationary to two third-party financial institutions, just like DFS did in this case. These are Visa and MasterCard. And the letter says, it's actually the parlance is much less official. The invocation of state power, I would say, is much less obvious because the sheriff in Backpage writes, quote, as a sheriff and a family man, I write to request that your institution immediately cease and like Backpage. So then the sheriff goes on to know that financial institutions have a legal duty to file SAR reports, which are sex trafficking reports, and please give me contact information so I can follow up with somebody. So here's a legitimate investigation. The sheriff has jurisdiction to prevent sex trafficking in his jurisdiction, but the Seventh Circuit looks at this and grants a preliminary injunction against this conduct. And what the government does is that government actions that purportedly target unlawful activity but shoot wide of the mark and suffocate protected speech still offend the First Amendment. Now, it's really telling to look at the language in the sheriff's letter that the Backpage court emphasizes because the Backpage court acknowledges there were no explicit threats in that sheriff's letter. But there's legal sounding terminology like cease and desist, even though the use of word institution and financial institution, the court notes, gives the letter an official imprimatur that would make a reasonable recipient believe they might be the subject of adverse regulatory action if they did not suppress the targeted speech. And that's a case out of the Seventh Circuit, but it's not the only case we cite that I think is relevant here. Ms. Rogers, could you could you turn to the allegations in paragraphs 21 and 69, which we are bound to take as true at this stage of the proceedings on a motion to dismiss for qualified immunity. Both of those paragraphs use the phrase that Ms. Brulow made clear that she might take regulatory action to pursue infractions. And I'm having difficulty, number one, understanding how that was made clear, what that exactly means. That seems to me an inference in a conclusory allegation that falls well short of a threat. And even if a threat to take regulatory action, that it was to do what she is supposed to do as head of DFS, which is enforce the regulations. So I recognize that that's two different questions. But what does not have specific words and a more detailed and transparent allegation? Certainly, Your Honor. So taking those questions one at a time, the NRA is trying to plead these allegations rigorously and truthfully, and we don't have a recording of this meeting. So we simply don't know what words were used. But the NRA is informed and believe that Lloyd's came out of this meeting knowing that if it cut off services to gun groups, not just the NRA, which is important because they allege this is about the NRA breaking the law. It's really about Second Amendment advocacy, which is why other gun groups are swept in. I have to interrupt for a second. You say knowing. Isn't believing a better choice of words? Because to the extent made clear, that could be by a shrug or, you know, I'm going to enforce these regulations, an explicit statement. But to call it a threat requires a fair amount of inference. And wouldn't you agree that that is that's the case? Your Honor, I agree that I would be happy to substitute believe or reasonably believe. I would also point out that under Iqbal, as the panel knows, all inferences are granted to the NRA. And I would just point out one more thing, which is this meeting is not in isolation. It's viewed amidst the tapestry and against the backdrop of everything else DFS has been saying and doing. So let's go on to the second question. Even if she made clear that she was going to enforce the regulations, what was unlawful about enforcing the regulations that she was charged with enforcing? It's unlawful to only enforce the regulations against your political enemies for the express purpose of stifling their speech. No, well, it is that she only enforced it against anyone. She enforced it against the people who were violating the law. But, but Your Honor, respectfully, what we... Is there any indication, do you have, that other insurance companies that were violating the law were not being enforced? They were not, eventually. Do you know of other insurance companies who also were violating the law who did not receive enforcement from DFS? So we identify, so it's, I hesitate a little bit at the term insurance companies just because the structure here is a bit complicated. So the way these affinity insurance programs work is you have an organization like the NRA, others that we cite are Habitat for Humanity, the New York Bar Association. They provide their list of members email addresses to a licensed insurance company and insurance policies are marketed. So there are other affinity organizations that were engaged in, we allege the exact same conduct. We even quote in our complaint, the exact same language on the website that DFS says was violative. And those, no, those organizations, similar to the situation to the NRA, the NRA is informed and believe, and believes in the, we see nothing in the public record that would show otherwise. They have got no information. Isn't this a selective prosecution claim, what you're describing? Yes, Your Honor. We did plead a selective prosecution claim. It was dismissed. It was dismissed. Absolutely. But under the precedent, at least in the Northern District, selective prosecution type allegations can still support a first amendment retaliation claim because that selective prosecution can be evidence of the animus that's an important element of the retaliation claim. And it can be itself a form of retaliation. And I can cite a district court level, but it's directly on point. There's this case. It is a case called, I'll find it in a moment, Your Honor. But basically there's a holding that literally says evidence of selective enforcement can be used to support a retaliation claim. And this is... Well, you can send it to us. Yeah, sorry. I just found it, Your Honor. I apologize. It's Franzen v. Messina Memorial Hospital. And that's at 32 F Supp 2nd 528. That's a decision out of the Northern District of New York. And that's a first amendment retaliation claim in the employment context. And what the court points out is that even though there's no selective enforcement claim, the idea, the allegation that the plaintiff was treated differently from his colleagues who did not engage in the speech is relevant and it makes the claim more plausible. In the employment context? So that's quite different, isn't it? From this setting where the head of the Department of Financial Services is charged with enforcing the law. It certainly is, Your Honor. But there are a number of cases that are actually harder to plead first amendment retaliation in the employment context because the employer has to oversee everyone. And this is different from the regulators interacting with a member of the public. But we think the selective nature of this, the fact that similarly situated entities to the NRA received no punishment is only one fact in this mosaic of facts that we think collectively raise these inferences that get our first amendment claim past the pleading stage. And so what are we to do with the fact that Ms. Vullo claims that allegations in the complaint are false? She has to accept that's true, all the allegations. But in doing that, she says these are false. What do we do with that? Well, respectfully, Your Honor, I think that raises questions about the court's jurisdiction. Because although there are many instances in which the existence or non-existence of a clearly established right is a pure legal issue of which the court would have interlocutory jurisdiction, it's pretty clear that in cases like this, where the appellant advances her own version of the facts and rejects the version pleaded, there is no jurisdiction. And a case I can cite for that is Walker versus Suffolk County Police Department. That's this court, Second Circuit, 508 Fed Appendix 85. And there's another- At this stage, though, we do have jurisdiction if we take all the allegations as true, and determine on that basis, we can make a determination whether she's entitled under clearly established law to qualified immunity or not. But we can't entertain- Is this what you're saying? We can't entertain a factual dispute at this stage. Is that right? That's right, Your Honor. So under Iqbal, we have to take the allegations as true, grant all available inferences to the NRA. But I would just point out- But again, we look at the well pleaded allegations. We don't have to accept conclusions of law. Isn't that right? Yes. Yes, Your Honor. And it's the NRA's contention that the phrase made clear, in an ideal world, would I know whether she wrote it down or spoke it aloud? Sure, but I don't. And I don't want to just guess in my pleading. But when you view this against the backdrop of everything else- The NRA concedes that the guidance letters are protected speech? We actually don't, Your Honor. And since the court is reviewing this de novo, I think this is an issue we could look at. If you read those How are they not protected speech? I mean, it's the DFS saying, we encourage you to reexamine your connections to the NRA in light of all the recent events and all the- How is that not protected speech? Because, Your Honor, it's official regulatory guidance issued to regulated institutions. It invokes risk management frameworks traditionally associated with solvency and soundness. And it is the NRA's contention that- A regulatory agency can't say, we encourage you to reconsider your ties to organizations it disagrees with, as long as it's not done in a coercive manner? It certainly depends on the context, Your Honor. It's very context sensitive. And if DFS put a fly The then governor has strong feelings about the NRA and it wants the executive agencies to implement his policy views. How is it clearly established that Ms. Vullo could not do what the governor wanted her to do in this context? If what the government's policy view is, is that the NRA, a political enemy should therefore be deprived of banking and insurance services to stifle its speech, that's an unconstitutional policy and that's the basis of this lawsuit. And I see that my time has expired. Thank you, counsel. Mr. Shelley has three minutes for rebuttal. Thank you. I want to directly address Judge Pooler, your point. Ms. Vullo is not, for purposes of this appeal, alleging that any of the facts are false. What she's saying is that some of the allegations are not factual, they're not well pled. And I just, I want, I think it's important to make that distinction. She says it's okay to accept the well pled facts as true, just not the conclusions. I also want to speak to my adversaries. Would you argue that coercion is a conclusion? Absolutely. It's a conclusion. That is the legal result. They can't simply say she made coercive comments. If they could, then there would be no Iqbal review at all. It would just be like, accept that as a conclusion and then move on. So that's a great example, your honor. The back page case that's cited by my adversary, of course, is not a case for damages. It's a case for an injunction. It's not a qualified immunity case. This is a case where the NRA is suing my client for money damages for work she did as a government employee. And qualified immunity is about giving that government official a breathing room to make decisions in uncertain areas without having to fear that large, important, and well-funded adversaries like the NRA or the banks or the insurance companies are going to come after her for money damages. So this is precisely the kind of case that the NRA applies in. The idea that this court should accept the tapestry and backdrop, that that is somehow sufficient to get past Iqbal, is exactly the problem. We've had three years of litigation. We've had three complaints. They have had discovery. They have gotten documents from Lloyds, the people in that meeting. And you heard my adversary acknowledge that she can't allege the words or anything close to the words. So she alleges, makes clear, and by the way, it's not makes clear that she's going to enforce. What the line is, is makes clear that Ms. Lula would be, quote, less interested in those kinds of violations. The reality is, the kinds of violations she was interested in were specific to the NRA. Murder insurance, an insurance product that said if you kill somebody with a criminal intent, effectively said, if you kill someone but have criminal intent, we will cover that. That is against public policy in New York. That's what this investigation was all about. These affinity violations were found along the way. By the way, that's in the complaint. That's not me saying it. That's them saying it. And so there are no comparators. And that's one of the reasons why this elective enforcement claim was dismissed. Because there's nothing quite like this, where you have a violation of the ugliness, quite frankly, of the NRA document that said that we will ensure people who commit an intentional murder or homicide. Unless there are any other further questions, I appreciate the court's time. Thank you very much. Thank you both. A lively argument, a reserved decision. That concludes our argument calendar. So I'll ask the clerk to adjourn court. First sentence adjourned. Thank you judges. I'll task for you now.